```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3   UNITED STATES OF AMERICA,

 4                   Plaintiff,         Case No. 11-20066, D-4
                                        Case No. 11-20129 D-10
 5
        -v-
 6
     VERNON RICH, et al.,
 7
                     Defendant.
 8   _____/

 9                ARRAIGNMENT AND DETENTION HEARING

10           BEFORE MAGISTRATE JUDGE LAURIE J. MICHELSON
                    United States Magistrate Judge
11            Theodore Levin United States Courthouse
                    231 West Lafayette Boulevard
12                       Detroit, Michigan
                     Tuesday, July 31, 2012
13
     APPEARANCES:
14
     FOR THE PLAINTIFF:     SAIMA MOHSIN
15                          U.S. Attorney's Office
                            211 W. Fort Street
16                          Suite 2000
                            Detroit, MI 48226
17
     FOR THE DEFENDANT:     JUAN A. MATEO, JR.
18                          535 Griswold
                            Suite 1030
19                          Detroit, MI 48226

20

21

22

23   Transcribed by:
     Christin E. Russell
24   CSR, RPR, FCRR, CRR
     (248) 420-2720
25
```

1                           I N D E X

2

3       Arraignment and Detention Hearing              Page

        Arraignment                                     3
4
        Detention Hearing
5       Proffer by Ms. Mohsin                           6
        Proffer by Mr. Mateo                           15
6       Argument by Ms. Mohsin                         21
        Argument by Mr. Mate                           23
7       Ruling of The Court                            24

8
                            E X H I B I T S
9
        (NONE OFFERED)
10

11

12

13

14      CERTIFICATE OF REPORTER                         29

15

16

17

18

19

20

21

22

23

24

25

1    Detroit, Michigan

2    July 31, 2012

3    1:35 p.m.

4         (The Transcriber was not present for this Hearing.)

5                         *       *       *

6         THE CLERK:  The Court recalls case 11-20066, USA vs.

7    Vernon Rich.  Oh, there's the another one.  11-20129.

8         MS. MOHSIN:  Yes.  Good afternoon, your Honor.  Saima

9    Mohsin on behalf of the United States.  This is the date and

10   time that has been set for the defendant's completion of

11   arraignment on two different indictments, as well as a

12   detention hearing.  I'm tendering to the Court copies of

13   completed acknowledgements on both of those cases.

14        THE COURT:  Okay.  Thank you.

15        MR. MATEO:  Good afternoon, your Honor.  Juan Mateo on

16   behalf of Vernon Rich, who stands to my left.

17        THE COURT:  Good afternoon, counsel.

18        Good afternoon, Mr. Rich.  Mr. Rich, as Ms. Mohsin

19   indicated, you're here this afternoon, first to complete the

20   arraignment on the two indictments that have been brought

21   against you, as well as several others, as well as a detention

22   hearing.  I've received from counsel a copy of your

23   acknowledgments of both indictments.

24        And, Mr. Mateo, what would you like to do about

25   reading the indictments?

ARRAIGNMENT AND DETENTION HEARING - 7/31/2012                    4

1          MR. MATEO:  Your Honor, we would waive reading of both

2    indictments, stand mute to both indictments.

3          THE COURT:  Okay.  And, Counsel, you're okay if we do

4    these both together?

5          MR. MATEO:  Certainly.

6          THE COURT:  Okay.  Mr. Rich, as I said, I've received

7    your acknowledgment of the indictments.  I just want to make

8    sure that you've received both indictments and that you've had

9    an opportunity to review them and to discuss the charges that

10   have been brought against you with your counsel.

11         Have you had that opportunity?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Okay.  And your acknowledgment of the

14   indictment in 11-20066 indicates that if you're convicted or if

15   you were to plead guilty to Count 6, you could be sentenced as

16   follows:  A minimum of 5 years to 40 years in prison, a 5

17   million dollar fine or both.

18         Mr. Rich, as to case 11-20066, do you understand the

19   charge that's been brought against you on Count 6, as well as

20   the penalties that you could face if you're convicted or if you

21   were to plead guilty to that count?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  Okay.  And in case 11-20129, the

24   acknowledgment of the indictment indicates that if you're

25   convicted or if you were to plead guilty, you could be

ARRAIGNMENT AND DETENTION HEARING - 7/31/2012                    5

1   sentenced as follows:

2          On Count 1, to life in prison, a $250,000 fine or

3   both.

4          On Count 2, up to 5 years in prison, a $250,000 fine

5   or both.

6          On Count 3, 10 years to life in prison, a 10 million

7   dollar fine or both.

8          On Counts 4, 5, 6, 15, and 16, up to 20 years in

9   prison, a one million dollar fine or both.

10          And on Counts 19 and 22, up to 10 years in prison, a

11   $250,000 fine or both.

12          So I want to ask you as well, Mr. Rich, with respect

13   to case 11-20129, do you understand the charges that have been

14   brought against you, as well as the penalties that you could

15   face if you're convicted or if you were to plead guilty to

16   those counts in the indictment?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Okay.  And I understand from your counsel

19   that you stand mute.  So the Court is going to enter a plea of

20   not guilty on your behalf to Count 6 of the indictment in case

21   11-20066, and on Counts 1, 2, 3, 4, 5, 6, 15, 16, 19 and 22, on

22   case 11-20129.

23          Counsel, I know this is also the time that was

24   scheduled for the detention hearing.  Are the parties prepared

25   to proceed?

ARRAIGNMENT AND DETENTION HEARING - 7/31/2012                    6

1              MS. MOHSIN:  The Government is ready, your Honor.

2              THE COURT:  Mr. Mateo?

3              MR. MATEO:  Ready, your Honor.

4              THE COURT:  Okay.  Ms. Mohsin?

5              MS. MOHSIN:  Your Honor, the Government is seeking

6    detention of this defendant, and we have filed previously a

7    written proffer in furtherance of our motion for detention.  It

8    was provided to the Court.  I don't know if your Honor has --

9              THE COURT:  Yes.

10             MS. MOHSIN:  -- had an opportunity to review it.

11             THE COURT:  Yes, I have.  And I have reviewed Mr.

12   Mateo's brief as well.

13             MS. MOHSIN:  Your Honor, then I will direct my

14   comments both to that written proffer, as well as to the

15   Pretrial Services' report.

16             When we initially appeared before the Court and the

17   issue of detention first arose, Pretrial Services was

18   recommending this defendant's release.  However, the Government

19   brought to the attention of the Pretrial Services' officer that

20   the information contained in the Pretrial Services' report

21   related to the defendant's criminal history was incomplete.

22             It's my understanding, having spoken with Pretrial

23   Services, that they have updated their recommendation.  I've

24   looked at their report.  They've included other convictions

25   that had not previously been included in the Pretrial Services'

1    report.  And, therefore, their recommendation for other reasons

2    that are also set forth in their memorandum, they are now

3    recommending detention.

4         So first and foremost, your Honor, I would proffer to

5    the Court that the defendant has been interviewed by Pretrial

6    Services, and their assessment is that he ought to be detained

7    pending the outcome of this case.  And I would proffer that

8    report in furtherance of that.

9         This is a presumption case.  And therefore, the

10   Government would ask the Court to take note of that as well.

11   The defendant stands before this Court, having been charged in

12   a very large number of counts, in two separate indictments

13   pending in this district.

14        The conduct that is alleged for both of those

15   indictments spans a large number of years, and it relates

16   largely to his involvement with a motorcycle gang called the

17   Devils Diciples.

18        As the Court has indicated that it has reviewed the

19   Government's proffer, I will not go into detail about that

20   organization other than to say that entering into that

21   organization, once you have been admitted, it is difficult to

22   leave that organization.  And typically, individuals who seek

23   to leave either leave in bad standing, which means that they

24   are kicked out of the club, or in some sort of semi-retirement.

25        So I put that out there because once an individual is

ARRAIGNMENT AND DETENTION HEARING - 7/31/2012                    8

 1   part of this organization, they are a part of this
 2   organization.  And if they want to get out of it, they have to
 3   surrender their motorcycle, their colors and any property that
 4   they have that bears the name or emblem or symbol of the club.
 5          THE COURT:  Do you refute or dispute the defendant's
 6   claim that he withdrew in 2007?
 7          MS. MOHSIN:  I neither repute or dispute it.  I would
 8   tell the Court that I don't have any knowledge that he did
 9   that.  I don't believe the investigation has shown that or not
10   shown that.  What I say to the Court is it is difficult to
11   leave this organization, and you are considered a part of this
12   organization.  That's what the investigation has shown.
13          I can proffer to the Court that, you know, this
14   defendant has been at at least one DD related event in the last
15   12 months.  I am neither suggesting nor implying that he is a
16   member right now, but he was a very long-standing member of
17   this organization.  And many of the criminal activities that he
18   has been engaged in over the course of the last ten plus years
19   have been in furtherance of this organization and the goals of
20   this organization.
21          Count 1 of indictment 11 --
22          THE COURT:  But if we assume, or if I assume for
23   purposes of this hearing that he did withdraw in 2007, we'd be
24   talking about conduct from pre-five years ago?
25          MS. MOHSIN:  Well, your Honor, I think what -- whether

1     he withdrew or not, I don't believe we have any information

2     that he withdrew.  In other words, he has made that statement

3     in his, in his motion, but what I am saying to the Court is you

4     cannot withdraw.  You either retire, in which case you're still

5     a member, or you get kicked out.

6              THE COURT:  Okay.  Please continue.

7              MS. MOHSIN:  Thank you, your Honor.

8              This individual has been involved with this

9     organization for over ten years.  He had a leadership role

10    within this organization.  The evidence against him, as it

11    relates to the counts set forth in the indictment is

12    overwhelming.

13             We have a number of various search warrants, wiretap

14    evidence, informant and cooperating witness information.  We

15    have seizures of evidence.  We have a tremendous amount of

16    evidence against this defendant.  He is facing a ten-year

17    mandatory minimum on one of the counts, and up to life

18    imprisonment on another.

19             A rough calculation of his guideline range as set

20    forth, based solely upon the methamphetamine distribution

21    quantities, and not on the other conduct in this case, yields a

22    level 38, which is 262 to 327 months' incarceration.

23             He stands before the Court with a fairly lengthy

24    criminal history.  Although many of the prior convictions are

25    misdemeanors, I would note for the Court that he has been

1   engaged in criminal activity fairly consistently and regularly

2   since the early 1980's.  He has gone from arrest and conviction

3   to arrest and conviction.

4           In 1990, he was convicted in Kansas of a felony.  He

5   was placed on probation.  He violated the terms of his

6   probation in a number of different ways, and as a result, they

7   terminated his probation and he was incarcerated for the term

8   of one to three years.

9           He has had other convictions.  Most recently in 2008,

10  he was convicted of a methamphetamine possession related

11  offense.  I draw your attention to that conviction, as we have

12  set forth in our proffer for detention.  Some of the

13  circumstances surrounding that particular conviction include

14  this defendant's attempts to mislead the court.

15          He had someone prepare a false document claiming that

16  the nearly $2,000 in cash that he had on his possession at the

17  time of his methamphetamine related arrest, that that money was

18  in fact lawfully earned when, in fact, it was not.  And that

19  was in an attempt to prevent that money from being forfeited.

20  That was a document that was submitted to the, to the police

21  department or the court that was involved in that arrest.  So

22  that is one example.  There are --

23          THE COURT:  He got bond in that case, though, right?

24          MS. MOHSIN:  Well, Judge, he may have gotten bond, but

25  he attempted to defraud the court in that case when he

 1    presented a false affidavit.  He had someone present a false

 2    affidavit claiming that that money was lawfully earned.

 3            What I'm saying and suggesting to the Court is that

 4    this is a defendant who will do -- you know, he will engage in

 5    misleading and fraudulent conduct in an effort to gain an

 6    advantage, even with the court.  And in that case, that's what

 7    occurred.  And the individual that prepared that false document

 8    was someone that worked -- that he worked with at his place of

 9    employment.

10            THE COURT:  And I don't want to minimize that; I think

11    that's significant.  But are you saying that you think that

12    makes him a flight risk, or a danger, or both?

13            MS. MOHSIN:  I think under 3142, it is a reflection of

14    his character.  And I think that we are setting forth all of

15    the factors we think are important about this individual's

16    character:

17            The fact that he has this lengthy criminal history.

18    The fact that he has, in addition to that incident involving

19    the $1,900, it's also set forth in that affidavit that he made

20    attempts to destroy evidence while he was in jail by contacting

21    members of the Devils Diciples, as well as family to go and

22    find evidence in his home that may have been seized by law

23    enforcement if a search warrant had been executed, and he told

24    them to hide that evidence.  So he has engaged -- we know about

25    this through wiretap evidence.  We were listening to his calls

1   while he was making calls saying please hide evidence that may

2   be found, you know, conversations to that effect.

3           So this is an individual who, when he is confronted

4   with some sort of law enforcement action, will take active

5   steps to defraud the Court, to hide evidence or destroy

6   evidence.  And so as a result, I think that he is a risk of

7   flight.

8           And certainly when someone is facing the magnitude of

9   the charges in this case, and I would also say, Judge, the

10  volume of evidence against this particular defendant in this

11  case, the incentive to flee is substantial.

12          The Government has disclosed to this defendant that we

13  were engaged in wiretapping of his telephone for a period of

14  time.  During the course of those wiretaps, substantial

15  evidence was seized, corroborated through search warrants and

16  witnesses, et cetera.

17          And so I think that he has a tremendous incentive to

18  flee the jurisdiction in light of the fact that the evidence is

19  so strong and does span such a large period of time, and the

20  fact that he is looking at so much time, if convicted of these

21  offenses.  So I think it's relevant to his character.  I think

22  it's relevant to the analysis of whether he poses a danger of

23  fleeing.

24          This is a defendant who, as I indicated, was in a

25  position of leadership.  The leadership of this organization is

```
1    of particular interest here because as the RICO indictment sets
2    forth, it is the leadership that is involved in ordering,
3    executing and making sure that orders are executed by, by the
4    members of the organization, whether they are to engage in
5    illegal gambling activity or illegal assaults or illegal
6    methamphetamine manufacturing or trafficking across the board.
7    This was an organization that was engaged in a wide variety of
8    criminal activities over a very long period of time.  And the
9    leaders of that organization were required to make sure that
10   the orders of the national leadership as well as the local
11   leadership were followed through.
12         Vernon Rich, as a long-standing member and a president
13   of the Port Huron chapter of the Devils Diciples was involved
14   in that activity.
15         One moment, please, your Honor?
16         THE COURT:  Sure.
17         (Brief pause.)
18         MS. MOHSIN:  Finally, your Honor, I would like to
19   address this defendant's employment.  According to the
20   defendant's motion, as well as the Pretrial Services' report,
21   he was or is employed by ABZ Steel in Shelby Township and has
22   been for over 13 years.
23         A lot of the Government's evidence about the drug
24   trafficking that went on in this case, not limited to
25   methamphetamine, but including other prescription drugs, shows
```

1    that this defendant was selling to members, or rather employees

2    at that location, and that, in fact, very large amount of

3    customers at that particular location.  The individual that I

4    referenced earlier that provided that false letter that he had

5    earned the money through employment also was employed by the

6    same company.

7            So I would provide that information to the Court to

8    say that I understand that he has claimed that he has been

9    involved in employment there for 13 years.  However, there are

10   a very large number of people at that particular organization

11   that were involved in both the receipt and distribution of drug

12   trafficking for this defendant over the period of time that's

13   alleged in the indictment.

14           We believe, your Honor, that this defendant is a risk

15   of flight.  We believe that he is also a danger to committing

16   additional criminal activities.  His criminal history starts in

17   the 1980's and it goes all the way up to the 2008 conviction.

18   That's a very long period of time.

19           The indictment talks about a wide range of activities

20   that were included during much of that time.  And we believe

21   that Mr. Rich and his criminal activities, that there is a risk

22   that he will continue to engage in these criminal activities

23   because of the fact that he has such a long history of

24   continuous criminal conduct.

25           For those reasons, we believe that he is a danger to

```
 1    the community.  We believe that he is a risk of flight.  It is
 2    a presumption case.  We would ask that the defendant be
 3    detained.
 4            THE COURT:  Was he on probation or any sort of
 5    supervised release?  The indictment, I guess, spans such a long
 6    period of time that he probably was, for some of the offenses?
 7            MS. MOHSIN:  Well, during the time the indictment --
 8    of the indicted conduct; is that what you're asking?
 9            THE COURT:  Yeah.  Was he on any sort of supervised
10    release?
11            MS. MOHSIN:  In 2005, he pled guilty to the felony
12    motor vehicles possession/delivery of vehicle ID.  And he was
13    sentenced in November of 2005 to two years' probation, and
14    probation was terminated in 2006.
15            His membership and participation in the club's
16    activities, including the gambling and drug trafficking
17    activity that I can think of, off the top of my head, would
18    have been going on during that period of time.
19            THE COURT:  Okay.  Thank you.
20            Mr. Mateo, do you agree this is a presumption case?
21            MR. MATEO:  I agree it's a presumption case, and
22    that's why I've done the -- taken an extraordinary step of
23    filing a written proffer to assist the Court in rebutting --
24    reviewing the evidence that rebuts the presumption.
25            And what we have here today, your Honor, is a young
```

1    man who is 47 years old, who is gainfully employed and has been

2    living in the area for many, many years, almost his entire

3    life.  And we have a case where we have documented evidence of

4    how he does while he is under supervision of the court.  And

5    what the Government --

6            THE COURT:  How about Kansas, though?

7            MR. MATEO:  Well, Kansas was 1990.

8            THE COURT:  Tell me about Kansas.

9            MR. MATEO:  And I'll explain it.

10           THE COURT:  Okay.

11           MR. MATEO:  Before, as I was writing the proffer, your

12   Honor, I was working under the apprehension, or the

13   understanding that Pretrial Services, for the third time since

14   2008, was recommending that Mr. Rich receive an unsecured bond,

15   including Mr. Homer Hinojosa, who did the Pretrial Services'

16   report in this case.

17           When we were last here, the Government indicated that

18   they were aware of this Kansas case, and they were going to

19   present that information to Pretrial Services.  I talked to Mr.

20   Hinojosa after he got that information last week.  And last

21   week, he told me that was not going to change his

22   recommendation of unsecured bond.

23           I then filed this extensive memorandum, detailing Mr.

24   Rich's past with this court and other courts where he has been

25   under supervision.  And today, I was able to discuss and get

 1    more information about the Kansas case.

 2            What happened in Kansas, that was in 1990, he was

 3    placed on probation for a bad check case.  Probation was

 4    transferred to the Port Huron area so that he could reside with

 5    his sister.  He had nowhere to live.  His sister, her name is

 6    Patricia, she took him -- was taking care of him.  Then she got

 7    evicted.  When she got evicted from the home, Mr. Rich had

 8    nowhere else to go.  Kansas did ask him to come back and he did

 9    not come back.  So technically, he did not return and he was

10    supposed to return.  But he had no place to go, your Honor.

11    Once he eventually got back to Kansas, he did serve his time.

12    He was on parole.  I attached as one of my exhibits the parole

13    discharge papers discharging him from parole.  And we're going

14    back to the '90s now.

15            Now, in this court, as of 2008, Mr. Rich has been

16    interviewed by Pretrial Services on three separate occasions.

17    And each time, whether it's Mr. Dwyer from Pretrial Services,

18    or Mr. Hinojosa, prior to this memo he filed yesterday, they

19    always recommended an unsecured bond, and that's because he has

20    a track record.  He had a conviction in 2007 where he was on

21    probation for two years in the St. Clair, yeah, St. Clair

22    County Circuit Court.  He completed his term of probation.

23    Other cases where he had been supervised by the court, it's all

24    documented, Judge, if he's told to come to court, he comes to

25    court.  If he's told to pay his fines and costs, he does that.

1          And for the Government to stand here and suggest that

2     he is this horrible risk of flight and this danger to the

3     community, I think, is disingenuous.

4          What has the Government done with Mr. Rich

5     specifically?  They have been talking to him since this

6     investigation has been ongoing.  They served him with a grand

7     jury subpoena for his fingerprints.  He cooperated with the FBI

8     in coming downtown and being printed, even though he had

9     counsel, didn't tell his lawyer, he just cooperated with them.

10    And then in 2007, that fine prosecutor, Mr. John O'Brien,

11    called him as a witness.  And he testified against a club

12    member in a felon in possession case in front of Judge Zatkoff.

13         Now, to suggest that he's a danger, he's this

14    incredible person, I think just is the Government talking out

15    of both sides of its mouth.  The real question is can you make

16    an individualized determination that he is eligible for bond,

17    and I think he is.

18         THE COURT:  Was the Government saying at some point,

19    though, do you say okay, you're right, and there have been

20    interviews and you've received bond and you have complied, but

21    at some point, you do become a danger, because then the pattern

22    becomes too much.  So 2005, and then 2007, and then 2009, and

23    now we have an indictment that suggests there may have been

24    conduct throughout this entire period that maybe nobody knew

25    about.

 1          MR. MATEO:  But what is the evidence of danger?  They

 2   have the burden of having to show by clear and convincing

 3   evidence he's danger to the community.  They write a proffer

 4   where they list one, one act of violence after another,

 5   killings, assaults and all that.  In my proffer, I say he had

 6   nothing to do with that.  They don't rebut that.  They are not

 7   suggesting he was involved in any of those acts of violence.

 8          He's charged with a felon in possession case in this

 9   court, I think it's 2008.  And that case was ultimately

10   dismissed on motion of the Government.

11          There is no evidence at all that he's ever threatened

12   or hurt or done anything that's dangerous to the community.  If

13   anything, my, my proffer shows he's working with this

14   Pentecostal church.  He's out there delivering food.  He's home

15   with his wife and his stepdaughter, who has a three-year-old.

16   He's taking care of them.  He's taking care of his elderly

17   parents who are chronically ill.  I have letters here, Judge,

18   from, from kids in the family who are saying he's a great guy;

19   he's not a danger.  He's been a benefit to the community.  He's

20   been a benefit to the, to the family.

21          For the Government to suggest he's a danger, well,

22   then they have the burden of proving by clear and convincing

23   evidence, not argument, that he's a danger.  And they are

24   referring to wiretaps and all sorts of things, but they haven't

25   produced anything.  They have not produced one shred of

1    evidence that proves he is a danger to the community.  And
2    that's --
3              THE COURT:  In the indictment, does it indicate the
4    wiretaps and the conduct that I assume Ms. Mohsin is referring
5    to here today?
6              MR. MATEO:  And that's what creates the presumption.
7    And what I'm saying, your Honor, is we could rebut that
8    presumption.  And with the proffer that we have filed with this
9    court, we have rebutted that presumption.  There are
10   combinations, or conditions or combination of conditions that
11   will take care of whatever issues may, may -- the Court may be
12   concerned about with regard to danger to the community.
13             His wife is in the courtroom, Wanda Rich.  She will
14   sign a third party custody agreement.  He can get back to work
15   and get back to take care of his family and his parents.
16             You can tether him if you wish, but there are
17   conditions that, that will address and mitigate your concerns
18   about whatever the allegations are that the Government is
19   making right now that he may be this "danger."
20             I just think it's not -- it's disingenuous.  They are
21   using him as a witness when they want to.  They were able to
22   convict that, that fellow motorcycle club, Mr. Victor Castano,
23   in part based on his testimony.  And now to suggest that he
24   can't be trusted, that he can't -- he's a danger, he's a flight
25   risk, it's disingenuous.

1          THE COURT:  Okay.  Ms. Mohsin, do you want to have

2   argument?

3          MS. MOHSIN:  I object to the characterization that the

4   Government's request for detention of a defendant who has been

5   indicted for RICO, being a leader in an organization that is

6   involved in the types of activities that are set forth in the

7   indictment, that that is somehow disingenuous with an

8   individual of this -- with this sort of track record.

9          I would just add for the Court that during the

10  execution of search warrants at this individual's home, which

11  occurred on more than one occasion, drugs, drug trafficking

12  related evidence, firearms were repeatedly found at this

13  defendant's home.

14         He has been engaged in ongoing activity, that's what

15  the investigation has shown, for a number of years, during some

16  periods of time, he was on probation for other offenses.  The

17  stakes have never been this high for Mr. Rich because most of

18  the offenses that he has been involved with since 1982,

19  actually, were not as serious as this one.  So I would just

20  state for the record that we object to any characterization

21  that this is a disingenuous request.

22         The Government has 41 defendants in this case.  We

23  have carefully selected defendants that we have sought

24  detention for based upon the factors and their conduct as

25  alleged in the indictments.  And so for those reasons, we would

 1   ask that the defendant be detained.

 2          THE COURT:  Tell me again your understanding of what

 3   the additional information is that was provided to Pretrial

 4   Services that --

 5          MS. MOHSIN:  Judge, we --

 6          THE COURT:  -- may have played a factor in altering or

 7   changing the recommendation.

 8          MS. MOHSIN:  Your Honor, I would have to have both

 9   reports in front of me.  But when we initially looked at the

10   Pretrial Services' report, and I think that the report that I

11   originally looked at about two weeks ago or so for Mr. Rich was

12   similar to the one that Mr. Dwyer had prepared in an earlier

13   case.  That report was deficient in that it did not contain two

14   felony convictions that this defendant was convicted of,

15   including the one from Kansas in which my understanding is that

16   he was engaged in violations, repeated violations of probation

17   that led to that being revoked.  But I have provided those

18   documents to Pretrial Services, and I don't have those in my

19   possession.  I turned them over to Pretrial Services.

20          So there was the Kansas conviction.  There was a later

21   conviction.  I would have to compare the two.  But there were

22   more -- there were at least two felony convictions that were

23   not included.  And as I look at this right now, I see

24   additional charges and convictions that I, I don't recall

25   seeing.  So if we were to look at the two in comparison to one

1    another, it would be obvious what had not previously been

2    reported.

3             MR. MATEO:  Your Honor, let's be accurate.  There's a

4    memorandum attached to Pretrial Services' report, it's dated

5    today's date, July 31st.  And the only case that is referred to

6    Mr. Hinojosa in that memorandum is the reference to the Kansas

7    case, the 1990 Kansas case.  And if that's what's changed, what

8    I'm saying, your Honor, is that is not clear and convincing

9    evidence that he is danger to the community, that he at one

10   point in time in the '90s didn't return to Kansas for violating

11   his probation.  That's, that's -- you know, he has a track

12   record since then that shows he has taken care of business when

13   it comes to complying with the court's orders.

14            THE COURT:  Okay.  Anything else you'd like to say in

15   terms of argument?

16            MR. MATEO:  No, your Honor.

17            THE COURT:  Ms. Mohsin?

18            MS. MOHSIN:  Nothing further from the Government, your

19   Honor.

20            THE COURT:  Counsel, what I'd like to do, I apologize,

21   I've not had the chance to review the Pretrial Service report.

22   I have had the chance to review your briefs.  I'd like to

23   re-review them.  I'd like to review the Pretrial Service

24   report, as well as some of the specific provisions of the

25   superseding indictment.  So I'd like to finish the remainder of

1    the docket and review those matters.  And then we'll reconvene

2    and I'll issue my ruling, why don't we say 3:30.

3              MS. MOHSIN:  Thank you, your Honor.

4              THE COURT:  Okay?  Thank you.

5              MR. MATEO:  Thank you, Judge.  Appreciate it.

6              THE DEFENDANT:  Thank you, ma'am.

7              (Recess taken at 2:03 p.m. until 3:35 p.m.)

8              THE CLERK:  The Court recalls cases 11-20129 and

9    11-20066.  USA vs. Vernon Rich.

10             MS. MOHSIN:  Saima Mohsin appearing on behalf of the

11   United States, your Honor.  Good afternoon.

12             MR. MATEO:  Good afternoon, your Honor.  Juan Mateo,

13   appearing on behalf of Mr. Vernon Rich, who stands to my left.

14             THE COURT:  Good afternoon again, counsel, and Mr.

15   Rich.  I appreciate the parties' patience, and Mr. Rich, yours

16   as well.

17             It's a lot of information to review and go over.  I

18   did want to have that opportunity, as I said, to review the

19   parties' submissions, to review the Pretrial Services' report,

20   as well as some of the information contained in the indictment.

21   You both made compelling arguments.

22             These are often, Mr. Rich, very difficult cases.

23             The parties acknowledge that this is a presumption

24   case.  I do note as well, though, the defendant has come

25   forward with some evidence to rebut the presumption.  There's

1    been a representation that, that Mr. Rich has known about the

2    investigation underlying the allegations since 2009 and there's

3    been no attempt to flee, and there's been some history of

4    complying with bond conditions in this district.

5           There are a number of factors that the Court has to

6    consider in determining whether to detain or release the

7    defendant pending trial.  And those factors are, first, the

8    nature and circumstances of the offense charged, including

9    whether the offense is a crime of violence or involves a

10   narcotic drug.

11          The defendant is charged here in two separate

12   indictments, and both do involve narcotic drugs.  One case

13   alleges that the defendant was a high-ranking member of the

14   Devils Diciples Motorcycle Gang, and that he actively

15   participated in and supervised the group's criminal activity

16   for a long period of time, including the distribution of large

17   amounts of methamphetamine, hydrocodone and other controlled

18   substances, and engaged in illegal gambling operations.

19          The Court has to consider as well the weight of the

20   evidence against the defendant.  Both cases involve

21   indictments, so there's been probable cause findings by a grand

22   jury.

23          The Government, in their submission, indicates that

24   they have wiretap interceptions, cooperating witness

25   statements, searches of Defendant's home that show that the

1    defendant was engaged in drug trafficking, including

2    methamphetamine manufacturing and distribution, marijuana and

3    hydrocodone distribution.  They give some specific examples of

4    that, that are identified in the third superseding indictment.

5            They also indicate that search warrants executed at

6    Mr. Rich's home on different dates have led to seizure of

7    drugs, drug trafficking materials, firearms and ammunition.

8            The Court also has to consider the history and

9    characteristics of the defendant.  The parties provide

10   conflicting versions of Mr. Rich's character.  The Government

11   focuses on the criminal history, what they claim are the

12   defendant's attempts to mislead the court and obstruct justice

13   in some prior circumstances.

14           The defendant focuses on, or I'm sorry, the Government

15   also focuses on, on Mr. Rich's role with a dangerous motorcycle

16   gang while the defendant focuses more on Mr. Rich's family

17   life.

18           He's been a lifelong member of this community.  He has

19   strong family ties, including a strong family support at this

20   proceeding.  He has strong community support.  There's

21   information regarding long term employment, although the

22   Government counters that that employment involved some drug

23   distribution with co-employees and customers.

24           The Pretrial Services' report also indicates there's

25   been a prior history of substance abuse.  The defendant has

1    pointed out that on two prior occasions, this Court has given

2    defendant bond.  But the flip side is the defendant does have a

3    significant criminal history going back to the 1980's.  And

4    while the early convictions are, are mainly misdemeanors, the

5    charges do appear to have escalated.  There's a 1990 offense

6    out of Kansas for which the defendant ultimately did abscond

7    from supervision for a period of time.

8           There's a 2005 conviction for marijuana possession for

9    which Mr. Rich received 30 days and two years' probation; a

10   2007 possession of methamphetamine conviction that resulted in

11   two years' probation.

12          And what does concern the Court is that I do have to

13   take the allegations in the indictment, because that's what's

14   before me, is that it does appear that while -- that Mr. Rich

15   was on probation during the time of the two indictments at

16   issue, especially the 2005 conviction for which he received two

17   years of probation.  The one indictment indicates that the

18   conduct goes through the present.  The other indictment

19   indicates drug distribution activity from 2003 to 2006, and

20   that's another factor the Court has to consider is whether at

21   the time of the current offense or arrest, the defendant was on

22   probation, on parole, or other release pending trial.

23          It doesn't appear that he was at the time of the

24   arrest, but it does appear that he was on supervised release at

25   the time of the, of the offenses that have been charged.

ARRAIGNMENT AND DETENTION HEARING - 7/31/2012                 28

```
 1          The Court also has to consider the nature and
 2   seriousness of the danger to any person or the community that
 3   would be posed by the defendant's release.
 4          There is a history, as I said, of drug trafficking
 5   activity, which does present a danger to the community.  The
 6   Government proffered that it occurred with some of Defendant's
 7   co-employees at his place of employment.
 8          The defendant does have a prior felony conviction and
 9   knows he can't possess a weapon.  And yet, the Government
10   proffered that search warrants have revealed -- did reveal a
11   firearm and ammunition in his home resulting in a felon in
12   possession charge.
13          So taking all of the factors into consideration,
14   including the presumption which you still consider in terms of
15   analyzing the factors, I do think the Government has met its,
16   its burden by clear and convincing evidence that no condition
17   or combination of conditions will reasonably assure the safety
18   of any other person.
19          So I am going to order that Mr. Rich be detained.  And
20   I will issue a written order to that effect.  You do have a
21   right to appeal that order.  And this case has been assigned to
22   Judge Cleland.  And so he will schedule your next court
23   appearance in this matter.
24          Thank you, counsel.
25          MS. MOHSIN:  Thank you, your Honor.
```

| | |
|---|---|
| 1 | MR. MATEO:  Thank you. |
| 2 | THE DEFENDANT:  Thank you, ma'am. |
| 3 | THE CLERK:  Court is in recess. |
| 4 | (Proceedings adjourned at 3:43 p.m.) |
| 5 | *       *       * |
| 6 | |
| 7 | |
| 8 | **CERTIFICATE OF REPORTER** |
| 9 | |
| 10 | I certify that the foregoing is a correct transcript |
| 11 | from audio recorded proceedings in the above-entitled cause on |
| 12 | the date hereinbefore set forth. |
| 13 | |
| 14 | |
| 15 | s/ Christin E. Russell |
| 16 | CHRISTIN E. RUSSELL, CSR, RPR, FCRR, CRR |
| 17 | Federal Official Court Reporter |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |